**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HACH COMPANY,** | ) | |
| Plaintiff, | ) ) ) | No. 10 C 3490 |
| vs. | ) ) | Judge Manning |
| **HAKUDO CO., LTD.,** a Japanese corporation, **JOHN ICHIRO TAKAHAMA,** an individual, | ) ) ) ) ) | Magistrate Judge Cole |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Hach Company ("Hach"), seeks to hold the defendants, John Ichiro Takayama and Hakuto Co., Ltd. ("Hakuto Japan"), liable for their claimed breach of an indemnification agreement that Hakuto Japan's purported alter ego, Hakuto America, had with Hach. Hach had purchased a company, Anatel, from Hakuto America (and others) and was promptly sued for patent infringement on the basis of Anatel products. Six months after the infringement suit was filed, Hakuto America was dissolved. Hach eventually settled with the patent holder and wants Hakuto Japan to follow through on its former subsidiary's obligations. It also charges Mr. Takayama, a former Hakuto America director, with violating Illinois law by failing to notify creditors that Hakuto America was being dissolved.

On October 14, 2010, defendants both filed motions to dismiss for lack of personal jurisdiction. (Dkt. # 29, #32). The hearing on the motion was set for October 19, 2010, at which time Hach would have pointed out that the motions were based on the affidavits of defendants Mr.

Takayama and Hakuto Japan's vice president, Shinkichi Suzuki[1] and, therefore, it needed discovery to respond. Judge Manning canceled the hearing on the motion, however, and ordered Hach to respond to defendants' dismissal motions by November 9, 2010. (Dkt. # 35).

It is important at the outset to emphasize that this is a matter about discovery into the question of personal jurisdiction; it is not about determining whether personal jurisdiction exists, whether Hach has failed to state a claim against either of the defendants, or whether the defendants have a valid motion to dismiss under Fed.R.Civ.P. 12(b)(2). The defendants' 12(b)(2) motion was already denied, although without prejudice, and was never even fully briefed. In other words, the parties' positions have never even had the benefit of a full development. The motion to dismiss and the question of personal jurisdiction are not a part of the referral, nor could they have been. *See* 28 U.S.C. §636(b)(1)(A); Fed.R.Civ.P. 72. I am without authority to decide those questions and, as it turns out, need not do so to resolve a discovery dispute. It is necessary to take note of the limited nature of my jurisdiction and of Judge Manning's referral because the defendants have focused a good deal of their arguments on these types of extraneous matters, rather than focusing exclusively on the narrower matter at hand.[2]

**1.**

For the most part, the background facts of this dispute are drawn from Hach's second amended complaint. Hakuto Japan was Hakuto America's parent corporation. Hakuto America was

---

[1] The affidavits state in conclusory fashion that neither Hakuto Japan nor Mr. Takayama have any contacts with the state of Illinois, and that Hakuto Japan had essentially nothing to do with Hakuto America. The affidavits were not included in the defendants' submissions herein, but were instead a part of the previously filed motions to dismiss [Dkt. # 30, 33], which have since been denied. [Dkt. # 53].

[2] They argue again and again that their 12(b)(6) motion is well-taken or that Hach has not made out a claim. These are simply not matters for me and they play no role in this decision.

2

an Illinois corporation with its principle place of business in Illinois. Mr. Takayama was on its board of directors during the period pertinent to the allegations of Hach's second amended complaint. Hach claims that Hakuto Japan fraudulently refused to fulfill contractual indemnification obligations incurred by its wholly owned subsidiary, Hakuto America, after having appropriated to itself the millions of dollars that the subsidiary received in consideration for that obligation. Because Hakuto Japan dissolved Hakuto America over 5 years ago, it could not be served or sued. But as Hach would have it, Hakuto Japan is Hakuto America's alter ego for purposes of the indemnity obligations. As a director of Hakuto America, Defendant Takayama was obligated by Illinois law to notify creditors of Hakuto America's dissolution. He failed to give that notice, perpetuating by omission, so the plaintiff's theory goes, the misleading impression that Hakuto America would meet its obligations.

All this began with a stock purchase transaction between Hach and Hakuto America about ten years ago. On May 20, 2001, Hach acquired Anatel Corporation ("Anatel"), a Colorado high-tech manufacturer, in a stock purchase agreement with the four largest Anatel shareholders. The largest was Hakuto America, which acquired its Anatel stock from its parent corporation, Hakuto Japan. Hakuto America paid no consideration for the stock. The decision to sell to Hach came directly from Hakuto Japan – Hakuto America played no part in it. (*Second Amended Complaint*, ¶ 39). As part of the transaction, the four largest Anatel shareholders agreed to indemnify Hach for a variety of claims and liabilities, including patent infringement suits. Hach paid Hakuto America in excess of $6 million for its Anatel stock and its indemnification. Besides Hakuto America, there were three other indemnifying shareholders: Howard Selby, Michael Stranahan, and Jack Yamamori. Hakuto America also entered into a contribution and administration agreement with

3

those three individual shareholders, promising that in the event of an indemnification claim by Hach, Hakuto America would pay its proportionate share of defense costs and any judgment. (*Second Amended Complaint*, ¶¶ 11-19, 42; Dkt. # 42, Exs. 6-8).

In 2002, Hach was sued in Colorado federal court for patent infringement, along with Anatel. *Sievers Instruments, Inc. v. Hach Company et al.*, Civil Action No. 02-K-0775. The parties eventually settled. (*Second Amended Complaint*, ¶¶ 28-36). When Hach wrote to the indemnifying shareholders designated representative, James Leidich, requesting they make good on their promises, it was rebuffed. Moreover, although Hakuto America had already been dissolved at the time, Mr. Leidich indicated he was acting on behalf of Hakuto America and the three individual shareholders. He closed his communication by referring Hach to "Thomas McMenamin, special counsel to Hakuto America, for further correspondence." (Dkt. # 42, Exs. 10-11). Hach filed suit against all four of the shareholders in Colorado state court for breach of contract and only then discovered that Hakuto America had been dissolved shortly after the *Sievers* lawsuit began. Hach had to dismiss Hakuto America as a defendant in the Colorado suit and was left to pursue its remedy against the remaining three shareholders. That suit has since been resolved, but Hach does not indicate the outcome. (*Second Amended Complaint*, ¶ 33-35).

Hakuto America was dissolved on September 26, 2002, seventeen months after the sale of its Anatel stock. The articles of dissolution were signed by Tokiashi Hirai as president of the corporation. (Dkt. # 42, Ex. 9). Hach alleges that Hakuto Japan's president and founder, Shigeo Takayama, was the ultimate decision-maker as to Hakuto America's activities. (*Second Amended Complaint*, ¶ 38). According to the testimony of the man who preceded Mr. Hirai as President of Hakuto America, Thomas Kastner – Hakuto America's president – Mr. Hirai was, at the same time,

4

the president of Hakuto Japan as well. (Dkt. # 42, Ex. 5, at 35-36). Mr. Takayama, the son of Hakuto Japan's founder and then-chairman, was also a director of Hakuto America at this time. (Dkt. # 42, Ex. 5, at 41).[3] Other Hakuto America board members also served on the board of Hakuto Japan, although they were "figureheads." (Dkt. # 42, Ex. 5, at 42-43). In fact, Hach believes that, at the time of Hakuto America's dissolution, all of its directors were directors or officers of Hakuto Japan – but this is one of the items about which Hach hopes to gain discovery.[4]

Mr. Kastner also testified that the proceeds from the Anatel sale went to Hakuto America and then were "dividended" to Hakuto Japan. (Dkt. # 42, Ex. 5, at 37).[5] Hach hopes to gain discovery regarding this.

The individual shareholders were left in the dark as well. Colorado counsel for the individual indemnifying shareholders had informed Hach's counsel that as late as 2008, Hakuto Japan continued to make payments to a legal defense fund, consistent with Hakuto America's obligations under the Contribution Agreement. (Dkt. # 42, Ex. 14). After Hakuto America's dissolution, some Hakuto entity—presumably Hakuto Japan— had to have been communicating with Masuda Funai in Illinois and directing that these payments be made. Hach predicts that discovery from the Colorado law firm – Ireland Stapleton – will confirm that years after Hakuto America's dissolution, Hakuto Japan continued to fulfill Hakuto America's obligations to the other indemnifying

---

[3] In his affidavit, Mr. Takayama does not say he wasn't a director of Hakuto America, but he does say he was never employed by an entity located in Illinois. So there is a contradiction between his assertions and those of Mr. Kastner, Hakuto America's president.

[4] The relationship between Hakuto Japan and Hakuto America Mr. Kastner describes is quite a bit closer than the relationship Mr. Suzuki describes in his affidavit.

[5] This testimony directly undermines that of Mr. Suzuki, who claimed that the two companies did not share assets.

shareholders.

Hakuto Japan argues that Hach cannot establish personal jurisdiction over it because: Hakuto Japan does not conduct business in Illinois; it has no place of business in Illinois; it has no employees in Illinois; it owns no property or assets in Illinois; it does not sell goods or services in Illinois; it pays no taxes in Illinois; and it was not a party to or involved in the negotiation of the stock purchase agreement or indemnification provisions that underlie this litigation. (S. Suzuki Declaration). Similarly, they assert that Mr. Takayama: has never lived or worked in Illinois; has resided and been employed exclusively in California; has never owned a business in Illinois; has never owned property in Illinois; conducts no business in Illinois. His claims his last visit to Illinois was in March of 2003 to attend a conference held by the American Academy of Pediatrics; and that his only visit to Illinois concerning the business of Hakuto America occurred in 2001 and was entirely unrelated to the subject Stock Purchase Agreement, the sale of Anatel shares, or the other allegations of Hach's Complaint. (Takayama Declaration). As has been noted, much of this is belied by the allegations of the seconded amended complaint and what little evidence Hach has scraped together without discovery.

In order to obtain discovery regarding the issue of personal jurisdiction, "'[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction . . . .'" *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009). It is left to the court's discretion just what constitutes a "colorable" claim. *Id.*, at 1026. In making that determination, the court must read the plaintiff's allegations liberally, drawing all reasonable inferences in the plaintiff's favor. *Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 878 (7th Cir. 2006).

In a situation like this one, where the discovery is being sought from a foreign corporation based on its relationship to its American subsidiary, the Seventh Circuit has held that the plaintiff must at least "show[] that the [parent corporations] exercised an unusually high degree of control over [the subsidiary] or that corporate formalities were not substantially observed, or that [the parent] provided [more than] standard administrative services to [the subsidiary]." *Riemer*, 230 F.3d at 947. Absent that showing, there is not "a colorable basis for jurisdiction." *Id*. The court has stressed that "[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Reimer*, 230 F.3d at 946. In *Reimer*, almost all of the plaintiff's evidence showed only that the foreign defendants were affiliated with ITCL, a Canadian corporation doing extensive business in the United States, without any showing that the defendants exercised an unusually high degree of control over ITCL or that corporate formalities were not substantially observed or that anything other than standard administrative services were provided to ITCL. That was not enough, the Seventh Circuit held.[6]

We begin with the case against Hakuto Japan. Distilling all of plaintiff's charges, it would seem that Hakuto Japan placed at least some of its directors on the board of Hakuto America. Having common directors or officers is generally a prerequisite to piercing the corporate veil, but it is not sufficient in and of itself. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008). Beyond that, however, Hakuto Japan, through Shigeo Takayama, controlled Hakuto America's activities, Anatel stock passed between Hakuto Japan and Hakuto

---

[6] In its conclusion, the opinion said "Corporate affiliation with and the provision of standard administrative services to ITCL are not sufficient minimum contacts to exercise specific personal jurisdiction over" the foreign defendants. 230 F.3d at 947. *See also id.* at 945 ("We adopt the rule that a corporate parent may provide administrative services for its subsidiary in the ordinary course of business without calling into question the separateness of the two entities for purposes of personal jurisdiction.").

America without payment, and Hakuto Japan controlled Hakuto America's Anatel deal with Hach. These are factors to be considered in piercing the corporate veil. *See Laborers' Pension Fund v. Lay-Complaint, Inc.*, 580 F.3d 602, 611 (7th Cir. 2009). Once it was consummated, Hakuto Japan siphoned off the proceeds of the deal with Hakuto America. *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1389 (7th Cir. 1994) holds that a parent's use of its subsidiary's assets as its own supports alter ego theory.

Shortly after the deal closed, Hakuto Japan dissolved Hakuto America. That certainly seems suspicious, as if Hakuto America were little more than a conduit for cash flow to Hakuto Japan. Then, while hiding the fact that Hakuto America was no more, Hakuto Japan undertook the dissolved corporation's obligations to pay into a defense fund under the Anatel stock purchase agreement. This, too, is significant. *See Foreland v. Agnates Corp.*, 540 F.3d 721, 739 (7th Cir. 2008) (commingling of affairs a factor in piercing the corporate veil).

The cases Hakuto Japan points to do not direct a different result. (*Defendants' Opposition*, at 6). None of them is about the showing – the "colorable claim" – that must be made to obtain discovery; all are about what the plaintiff must prove before the court will actually exercise personal jurisdiction. Even so, in *McDougall v. Edwards*, 1996 WL 385344 (N.D.Ill. 1996), the court found that the plaintiff had not even asked for a piercing of the corporate veil in the complaint and refused to find an *implied* alter ego cause of action. 1996 WL 385344, *7. That is not the case here. And in *Continental Insurance. Co. v. Loewen Group, Inc.*, 1998 WL 142380 (N.D.Ill. 1998), the court refused to exercise personal jurisdiction on due process grounds because the plaintiff had alleged only that the parent corporation oversaw certain aspects of its subsidiary's activities and derived no economic benefit from Illinois. 1998 WL 142380, *12. By contrast, Hakuto Japan extracted a

sizeable economic benefit from Illinois when it siphoned off the proceeds of the Anatel sale from Hakuto America. And, as already noted, there are further factors at play.

Finally, *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371 (7th Cir. 2008), which the defendants cite for the proposition that "[t]he exercise of personal jurisdiction based on alter ego grounds is not favored," has nothing to do with personal jurisdiction. It is a summary judgment case where, "*after extensive discovery*," *id.* at 377, the court determined that the plaintiff was unable to establish its alter ego theory.[7]

Of course, all this is not to say that Hach has established personal jurisdiction over Hakuto Japan, but merely that it has made out a colorable claim. Not much more can be asked of it at this time because it has yet to engage in discovery. *See Phencorp*, 440 F.3d at 878 ("Since [plaintiff] was denied the opportunity to engage in discovery, it is not surprising that it can do little more than suggest that [defendant] currently has minimum contacts . . . ."). All that its showing merits is limited discovery, narrowly targeted at this jurisdictional question. That means discovery will be limited to contacts with Illinois, where Hach has chosen to bring suit. Hakuto Japan's activities throughout the United States – something that Hach says it will be targeting in its discovery – are not a part of this equation.[8] Nor, based on what Hach has related in its motion, are events from as

---

[7] The brief also misreads *Kohler Co. v. Kohler Int'l, Ltd.,* 196 F.Supp.2d 690 (N.D.Ill. 2002), as applying the fiduciary shield doctrine "to the President and Secretary-Treasurer of Dimensional Millwork of Chicago, an Illinois based corporation." (*Takayama's Brief in Opposition to Hach's Supplental Brief*, at 6). But the case came to precisely the opposite conclusion, finding that "the Edgemons [the President and Secretary-Treasurer] *cannot* hide behind the fiduciary shield doctrine, because their interests are coextensive with the interests of Dimensional Millwork of Chicago," *id.* at 699(emphasis supplied), and that there was personal jurisdiction over the two officers. *Id.* at 700. Other similar misreadings of cases are found in the brief. Separating the wheat from the chaff has been needlessly time-consuming.

[8] Hach's claims, for breach of contract and violation of an Illinois statute, do not arise under federal law. *See ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001). As this is a
(continued...)

long ago as 1998. The discovery should be limited to Hakuto Japan's direction of the activities discussed herein: the Anatel deal, the distribution of the proceeds, the dissolution of Hakuto America, Hakuto Japan's activities with respect to the defense fund, etc. Hach should redraft its inquiries with this in mind. If there are still disputes, the parties are advised that strict compliance with Fed.R.Civ.P. 37(a)(1) and Local Rule 37.2 will be required before any discovery motions will be entertained. The parties should also agree to deadlines and time limits for this exercise which should not be difficult since Hach represents that its discovery won't take terribly long. (*Memorandum of Law*, at 3). As for Hakuto Japan, unamplified boilerplate objections, like "unduly burdensome" or "overly broad", will be unacceptable, *United Auto. Insurance. v. Veluchamy*, 2010 WL 749980, *5 (N.D.Ill. 2010)(collecting cases), as will unsupported accusations of "fishing expedition." *Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 931 (7th Cir. 2004)(" . . . of course, pretrial discovery is a fishing expedition and one can't know what one has caught until one fishes.")(Posner, J.). *Cf. Hickman v. Taylor,* 329 U.S. 495, 507-508 (1947)("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case."); *U.S.O. Corp. v. Mizuho Holding Co.,* 547 F.3d 749, 754 (7th Cir. 2008)("In Japan, the trial itself blends the American trial equivalent with the American discovery equivalent. Granted, even between court hearings Japanese lawyers cannot conduct the indiscriminate and largely unsupervised fishing expeditions that characterize some American discovery.").

---

[8](...continued)
diversity case (*Second Amended Complaint*, ¶ 9), the court has personal jurisdiction only where an Illinois court would have such jurisdiction. *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 760 (7th Cir. 2008).

**2.**

That leaves Mr. Takayama. For the most part, Hach bases its personal jurisdiction argument regarding him on the fact that he was on Hakuto America's board of directors and was, therefore, responsible for the corporation's violation of Illinois law when it failed to notify creditors of its dissolution. 805 ILCS 5/8.65(2). Defendants argue that Illinois' fiduciary shield doctrine prevents the court from granting discovery into the issue of personal jurisdiction over him based on his position as a director of Hakuto America[9] because the doctrine prevents Illinois courts from taking personal jurisdiction over individuals who enter the state solely as the fiduciary of another, *ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 550 (7th Cir. 2001)(citing *Rollins v. Ellwood*, 141 Ill.2d 244, 278, 565 N.E.2d 1302, 1314 (1990)).

The Illinois Supreme Court adopted the fiduciary shield doctrine in 1990 in *Rollins v. Ellwood*, which involved the question of jurisdiction over a Baltimore police officer, Ellwood, sent to Illinois to apprehend a suspect. The Illinois Supreme Court's conclusion emphasized that it was not articulating some global pronouncement applicable to any corporate employee who came into contact with Illinois. Rather, the court focused on the unique situation that involved the officer's coming into Illinois. :

> We find that it is not fair, just, and reasonable for the Illinois courts to assert personal jurisdiction *over one in Ellwood's situation*. Ellwood entered into Illinois, and while in Illinois engaged in conduct giving rise to the present cause of action, solely in his capacity as a police officer acting for the Baltimore police department and the State

---

[9] Defendants also argue that the dissolution claim against Mr. Takayama fails as a matter of law and direct me to its motion to dismiss. (*Defendants' Opposition*, at 5). As I have no authority to rule on any arguments raised in such a motion, 28 U.S.C. §636(b)(1)(A); Fed.R.Civ.P. 72, it can play no part in this determination. Moreover, the motion was denied (without prejudice) in November 2010. [Dkt. # 60]. Briefing was suspended at that time, so these arguments have not even had the benefit of a full development by the parties.

> of Maryland. The nature and quality of his actions in Illinois were characterized by his status as a police officer employed by these entities. Because Ellwood's conduct in Illinois was a product of, and was motivated by, his employment situation and not his personal interests, we conclude that it would be unfair to use this conduct to assert personal jurisdiction over him as an individual.

*Rollins,* 565 N.E.2d at 1318 (emphasis supplied). The police officer, of course, was not in a position remotely comparable to that of a director or corporate officer, with some measure of control over his duties and with some measure of authority over the affairs of his employer. Moreover, the Baltimore police department obviously was not headquartered in Chicago, as was Hakuto America, when Mr. Takayama voluntarily served on its board. Finally, unlike the situation presented in *Rollins*, there was ongoing sustained activity by Hakuto America (and its corporate officers and directors) in Illinois rather than an isolated contact between an employee with effectively no control over his duties. In sum, it simply cannot be said that Mr. Takayama is "one in Ellwood's situation." *Rollins*, 565 N.E.2d at 1318.

**3.**

Moreover, the fiduciary shield doctrine, as it has often been applied, becomes a curious thing when one takes even a quick at Illinois's long-arm statute:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
> 
> \*   \*   \*
> 
> The performance of duties as a director or officer of a corporation organized under the laws of this State or having its principal place of business within this State;

735 ILCS 5/2-209(a)(12). As alleged, the dissolution claim arises out of Mr. Takayama's performance of his duties as a director of Hakuto America, which was an Illinois corporation with

its principle place of business in Chicago. Hence, on the current record, the statute's requirements for personal jurisdiction over Mr. Takayama are met. *See Hollinger Intern., Inc. v. Hollinger Inc.*, 2005 WL 589000, *12-14 (N.D.Ill. 2005).

There certainly seems to be some tension between the fiduciary shield doctrine and the long-arm statute – or at least a conflict with the manner in which Mr. Takayama is trying to use it. But the apparent conflict vanishes upon proper analysis. Unfortunately, the defendants' brief ignores the very existence of Illinois' long-arm statute, with its uncompromisingly plain language that subjects corporate directors and officers of Illinois corporations to personal jurisdiction. (*Defendants' Opposition*, at 4-5).

The issue, squarely presented by the facts of this case, has been considered in other cases and in each the court has found the fiduciary shield doctrine inapplicable. *See e.g., International Business Machines Corp. v. Martin Property & Cas. Insurance., Agency, Inc.*, 281 Ill.App.3d 854, 862, 666 N.E.2d 866, 871 (1st Dist. 1996)((finding that "a director and officer of an Illinois corporation . . . tacitly accepted both the duties and the benefits conferred upon him by Illinois law. His position with [the corporation] and the existence of the Illinois long-arm statute gave fair warning to [him] that he may one day be hailed into court here for his conduct as an officer or director. Indeed, any other conclusion would render meaningless the provisions of section 2-209(a)(12) of the long arm statute which provide explicitly for the exercise of jurisdiction over non-resident directors and officers . . . ."); *Banwell v. Illinois College of Optometry*, 981 F.Supp. 1137, 1142-43 (N.D.Ill. 1997)(following *IBM* to find fiduciary shield doctrine inapplicable to directors of an Illinois corporation); *People ex rel. Morse v. E & B Coal Co., Inc.*, 261 Ill.App.3d 738, 747, 634 N.E.2d 436, 442-43 (5th Dist. 1994)(fiduciary shield inapplicable where defendant "freely chose to

accept a directorship . . . with full knowledge that [company] was an Illinois corporation conducting a mining operation in Illinois."); *Household Commercial Financial Services, Inc. v. Trump*, 1993 WL 389386, *8 (N.D.Ill. 1993)(". . . it is doubtful the fiduciary shield doctrine even applies, given that § 2-209(a)(12) specifically provides that personal jurisdiction exists over a director of a corporation organized under the laws of Illinois or having its principle place of business in Illinois . . . . the fundamental fairness policies of the fiduciary shield doctrine are not implicated in the case of an individual who accepts a directorship of an Illinois company.").

These cases recognize the inherent limitations in the fiduciary shield doctrine – limitations adverted to by the Illinois Supreme Court in *Rollins*, where it said that neither fairness, justice, nor reasonableness allows for the assertion of personal jurisdiction by the Illinois courts "over one in [Police Officer] Ellwood's situation." As discussed above, corporate officers and directors could not be more dissimilarly situated from him. They freely assume their fiduciary duties; they have a range of choices and a freedom of action that, as a practical matter, Officer Ellwood never had. And. as with all volitional choices, there are consequences. By contrast, Officer Ellwood had no choice, at least as a practical matter, and he could not have envisioned, at the time he became a police officer, being sent into Illinois and thereby subjecting himself to suit in a place far from his home. Corporate officers and directors are fully aware at the time of the assumption of their duties that they will be acting on behalf of an entity that is either incorporated in Illinois or has its principle place of business here. In short, the underlying considerations of fairness that animate the fiduciary shield doctrine are not remotely implicated in cases involving corporate directors and officers.

The cases cited above appear to be the only ones that have considered the fiduciary shield's applicability in light of the long-arm statute's specific reference in §2-209(a)(12) to jurisdiction over

14

non-resident officers and directors of Illinois corporations. Defendants have not cited a single case where the interplay between the fiduciary shield doctrine and the long-arm statute has been discussed where the statute did not trump the doctrine when applied to corporate officers and directors. And our independent research has not disclosed one. Cases that have applied the doctrine to directors or officers of Illinois corporations make no mention of the very provision the Illinois legislature enacted to cover these types of situations. *See e.g., Denari v. Rist*, 2011 WL 332543, *1 (N.D.Ill. 2011); *Dick Corp. v. SNC-Lavalin Constructors, Inc.*, 2006 WL 1049724, *4 (N.D.Ill. 2006); *Benda v. Per-Se Technologies, Inc.,* 2004 WL 1375361, at *2 (N.D.Ill. June 17, 2004); *Interlease Aviation Investors II (ALOHA) L.L.C. v. Vanguard Airlines, Inc.,* 262 F.Supp.2d 898, 910 (N.D.Ill. 2003); *Continental Cas. Co. v. Marsh,* No. 01 C 0160, 2002 WL 31870531, at *6 (N.D.Ill. 2002); *Plastic Film Corp. of America, Inc. v. Unipac, Inc.*, 128 F.Supp.2d 1143 (N.D.Ill. 2001); *Brujis v. Shaw,* 876 F.Supp. 975, 978 (N.D.Ill.1995).

This silence is no doubt the result of the parties' failure to have raised the long-arm statute's specific provision covering corporate officers and directors. It is simply not conceivable that had the argument been raised, judge after judge would have failed even to have mentioned it – especially when the issue would be outcome-determinative. In *Benda*, for example, the plaintiff did not even dispute that the fiduciary shield applied, 2004 WL 1375361, at *2, and in *Denari*, the *pro se* plaintiff argued only that the defendant officers had minimum contacts with the state.

Where arguments are not made by the parties, courts have been cautioned that it is not their obligation to research and construct the legal arguments available to parties, *Gross*, 619 F.3d at 704; *United States. v. McLee,* 436 F.3d 751, 760 (7th Cir. 2006), and that they are not to go beyond the briefs and effectively assume the role of counsel. *See Fabriko Acquisition Corporation v. Prokos*

536 F.3d 605, 609 (7th Cir. 2008); *Kay v. Board of Educ. of City of Chicago*, 547 F.3d 736, 738 (7th Cir. 2008); *Hartmann v. Prudential Insurance. Co. of America*, 9 F.3d 1207, 1214 (7th Cir. 1993).

Thus, those cases that have applied the fiduciary shield doctrine to corporate officers and directors without considering the inter-relationship between the fiduciary shield doctrine and the Illinois long-arm statute, have no value here, for prior cases have precedential value only when there has been a deliberative consideration of the issue at hand. *Sub-silentio* or assumptive resolution is not enough. *See United States v. More*, 7 U.S. 159, 172 (1805)(Marshall, C.J.); *United States v. Acox*, 595 F.3d 729, 731 (7th Cir. 2010)("A handful of opinions in this circuit make what appear to be *de novo* appellate decisions on the good-cause question.... But the briefs in those cases did not join issue on the standard of appellate review, and the opinions do not discuss this subject... so they do not establish holdings."); *United States ex rel. Lusby v. Rolls Royce Corp.*, 570 F.3d 849 (7th Cir. 2009); *Karraker v. Rent-A-Center, Inc.*, 492 F.3d 896 (7th Cir. 2007); *Petrov v. Gonzales*, 464 F.3d 800, 802 (7th Cir. 2006)("Because *Tunis* did not mention the subject, it does not contain a holding on the issue [citing Supreme Court cases].").

In light of §2-209(a)(12), the fiduciary shield might cover employees like the police officer in *Rollins*, but it does not cover directors like Mr. Takayama, who can be taken to task for the performance or neglect of the corporate duties. *See supra* at 11; *E&B Morse*, 261 Ill.App.3d at 747, 634 N.E.2d at 442-43 (distinguishing between ordinary employer and corporate officers and directors). Defendants have not cited a single case that has precluded jurisdictional discovery based on the fiduciary shield doctrine. The only cases that discuss discovery and the doctrine indicate that it does not shield one from discovery; in fact, discovery is necessary before its applicability can be determined. *See Seaga Mfg., Inc. v. Fortune Metal, Inc.*, 2001 WL 1196184, *1 (N.D.Ill.

2001)(concluding that fiduciary shield issue could not be resolved before further discovery); *A.I. Credit Corp. v. Legion Insurance. Co., Inc.*, 1998 WL 460271, *2 (N.D.Ill. 1998)(fiduciary shield doctrine not designed to thwart discovery; tenor of most cases is that discovery is necessary before applicability of the doctrine can be determined)(collecting cases); *Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.*, 1995 WL 109322, *2 (N.D.Ill. 1995)(motion to dismiss denied pending completion of discovery related to fiduciary shield doctrine). The Seventh Circuit, which has not spoken directly on subject, has indicated the same thing. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 915 (7th Cir. 1994)(the court held that a party did not use "ample tools of pretrial discovery" to "turn up material relevant to the fiduciary shield doctrine").

In sum, and without deciding the question of personal jurisdiction over Mr. Takayama, it can be said that Hach has at least a "colorable claim" of jurisdiction, and that is sufficient to allow relevant and limited discovery, subject to the same types of limitations discussed in relation to Hakuto Japan. Since Hach hopes to base personal jurisdiction over Mr. Takayama on his hand in the purported violation of 805 ILCS 5/8.65(2) – *see* 735 ILCS 5/2-209(a)(12) – discovery should be targeted to that and his contacts with Illinois due to his position with Hakuto America and any involvement he may have had in or knowledge of the sale of the Anatel stock and the movement of the sale proceeds to Hakuto Japan. Discovery properly and narrowly focused on the *alter ego* issue would also be appropriate. As with discovery involving Hakuto Japan, strict compliance with Fed.R.Civ.P. 37(a)(1) and Local Rule 37.2 will be required before any discovery disputes will be heard.

Moreover, in the event of further discovery disputes regarding either Mr. Takayama or Hakuto Japan, the parties' briefs must contain arguments that are fully developed and supported.

Conclusory, skeletal, or perfunctory briefing will result in waiver of the issue, as the Seventh Circuit has repeatedly held. *See United States v. Collins,* 604 F.3d 481, 488, n. 2 (7th Cir. 2010); *White Eagle Co-opinion Ass'n v. Conner,* 553 F.3d 467, 476 n. 6 (7th Cir. 2009)(collecting cases); *Fabriko Acquisition Corporation v. Prokos,* 536 F.3d 605, 609 (7th Cir. 2008); *de la Rama v. Illinois Dept. of Human Services,* 541 F.3d 681, 688 (7th Cir. 2008); *United States v. Hook,* 471 F.3d 766, 775 (7th Cir. 2006); *Thakore v. Universal Mach. Co. of Pottstown, Inc.*, 670 F.Supp.2d 705, 717 (N.D.Ill. 2009)(collecting cases).

## CONCLUSION

The Motion to Conduct Jurisdictional Discovery [#41] is granted in part and denied in part as explained above.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 3-24-11